IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA TRAINOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| SBC SERVICES, INC., | ) | 04 C 779 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna Trainor has sued SBC Services, Inc. for sex and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and for sex-based wage discrimination in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(D)(1). Before the Court is SBC's motion for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion.

## FACTS[1]

In 1996, Ameritech hired Trainor, an African-American woman, as a general accountant. (Def.'s LR 56.1(a)(3) ¶¶ 2, 5.) Starting in 1998, she was the payroll tax manager in Ameritech's payroll office. (*Id.* ¶ 6.)

In 1998, Ameritech, in anticipation of its merger with SBC, issued the Ameritech Management Employees Severance Plan ("Change in Control Severance Plan" or "CIC Severance Plan"). (*Id.* ¶ 17.) The CIC Severance Plan provided that if an individual's

---

[1] Unless otherwise noted, the following facts are either undisputed or deemed admitted because the party's response failed to comply with Local Rule 56.1, which this Court in its discretion strictly enforces.

employment was terminated during the twenty-four month period following the change in control for reasons other than cause, or by the employee for "good reason" (*i.e.*, due to a material diminishment in the employee's responsibilities), the employee would be entitled to receive severance benefits. (*Id.* ¶ 18.)

On October 21, 1999, SBC's acquisition of Ameritech was finalized. (*Id.* ¶ 23.) This event qualified as a "change in control" under the terms of the CIC Severance Plan. (*Id.* ¶ 22.) Thus, an Ameritech management employee would be eligible for severance under the CIC Plan only if he or she was involuntarily terminated for a reason other than cause, or suffered a material diminishment in his or her job duties on or before October 21, 2001, which was twenty-four months after the effective date of the merger. (*Id.* ¶ 24.)

Prior to SBC's acquisition of Ameritech, the companies maintained separate payroll offices as well as payroll and human resources database and software systems. (*Id.* ¶¶ 25, 28.) Ameritech used software provided by PeopleSoft, and SBC used software provided by SAP that was referred to within SBC as "eLink." (*Id.* ¶¶ 26-27.)

Prior to October 2001, Trainor knew unequivocally that the conversion of the human resources and payroll systems would not be completed in time for her job to be eliminated within the CIC Severance Plan eligibility period. (*Id.* ¶ 43.) At a meeting held prior to October 21, 2001, Trainor asked Patricia Chapin, the Vice President of SBC's Billing and Payroll Operations, what effect the delay of the conversion would have on her ability to receive benefits under the CIC Severance Plan. (*Id.* ¶ 44.) Chapin informed Trainor that SBC's policy was to attempt to retain employees and that she would not be released or "grandfathered" into the CIC Severance Plan. (*Id.* ¶ 45.) Trainor left the meeting thinking that "all [she] had was continued employment." (*Id.*)

2

In July 2002, SBC officially approved a plan to reduce expenses that called for the post-conversion consolidation of the Chicago payroll office into the St. Louis payroll office, whose staff was already working under the SBC systems. (*Id.* ¶¶ 51-52.) A delay in the conversion to the SBC systems ultimately delayed the closing of the Chicago payroll office. (*Id.* ¶ 46.) On January 1, 2003, the conversion to the SBC payroll systems was completed. (*Id.* ¶ 40.)

In May 2003, Trainor interviewed for a lateral position in the Treasury Department. (*Id.* ¶ 57.) However, Trainor states, and SBC disputes, that she withdrew her application because she was not interested in another job that was also being phased out. (Pl.'s LR 56.1(b)(3)(A) ¶ 58.) Trainor did not apply for any other position within SBC. (*Id.* ¶ 59.)[2]

On July 11, 2003, SBC gave Trainor a surplus notification letter that stated that her position was being eliminated and that she had the option either: (1) to continue to work for up to thirty days and search for a position within SBC; or (2) to terminate her employment immediately and receive benefits under the applicable severance plan in return for her signing a waiver and release of claims. (*Id.* ¶ 63.) Trainor states, and SBC disputes, that she elected to continue her employment with SBC but there were no job opportunities for her. (*Id.* ¶ 64.) Trainor did not sign the waiver and release or receive severance because she wanted to pursue litigation against SBC. (*Id.* ¶ 66.) It is undisputed that July 11, 2003 was her last day of employment with SBC. (*Id.* ¶ 65.)

Bill Schaller, a Caucasian male, was a manager in the Chicago payroll office. (Pl.'s LR 56.1(b)(3)(A) ¶ 31.) When the office closed, Schaller received a new position within SBC. (*Id.*)

---

[2]Trainor unsuccessfully attempts to deny this statement of fact. (*See* Pl.'s LR 56.1(b)(3)(A) ¶ 58.) That she had reasons for not applying for another position does not refute the fact that she did not do so.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), the Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When considering evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All facts must be viewed and reasonable inferences drawn in the light most favorable to the non-moving party. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Ind. Bell Tel. Co., Inc.* 47 F.3d 928, 931 (7th Cir. 1995).

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). The EPA prohibits an employer's discrimination between employees on the basis of sex "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

First, SBC argues that Trainor's Title VII and EPA claims based on its declaring her ineligible for, and refusing to grandfather her into, the CIC Severance Plan are time-barred. Second, SBC argues that to the extent any of her claims were timely filed, she still fails to establish a genuine issue of material fact regarding her race and sex discrimination claims.

4

1.  **Statute of Limitations**

"Under Title VII, a plaintiff has 300 days from the occurrence of an allegedly discriminatory act in which to file a timely charge either with the federal Equal Employment Opportunity Commission or the appropriate state agency . . . ." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999). An Equal Pay Act claim is generally subject to a two-year statute of limitations.[3] 29 U.S.C. § 255(a). SBC argues that Trainor's Title VII and EPA claims based on SBC's declaring her ineligible for, and refusing to grandfather her into, the CIC Severance Plan are time barred. The Court agrees.

Trainor admits that prior to the date of expiration of the CIC Severance Plan eligibility period, or October 21, 2001, Patricia Chapin, SBC's Vice President of Billing and Payroll Operations, told her that she was not eligible for and would not be "grandfathered" into the CIC Severance Plan because Trainor would continue to be employed by SBC as of that date. (Def.'s LR 56.1(a)(3) ¶ 45; Pl.'s LR 56.1(b)(3)(A) ¶ 45.)[4] Trainor admits that "I left the meeting [with Chapin] thinking . . . that all I had was continued employment." (Def.'s LR 56.1(a)(3) ¶ 45.)

Even when viewed in the light most favorable to Trainor, Title VII's 300-day statute of limitations on her claim that SBC discriminated against her when it declared her ineligible for, and refused to grandfather her into, the CIC Severance Plan expired on August 17, 2002, or 300 days after October 21, 2001. Trainor filed her EEOC Charge on September 24, 2003, more than one year later.

---

[3] Trainor states that the two-year statute of limitations applies in this case. (Pl.'s Resp. Def.'s Mot. Summ. J. at 7.)

[4] Although Trainor denied this statement, she failed to support her denial with any citation to the record. As a result of her failure to comply with LR 56.1(b)(3)(A), the Court deems the movant's statement admitted.

5

As for her EPA claim, Trainor had two years from October 21, 2001, or until October 21, 2003, to file a complaint with this Court. Plaintiff filed her complaint on January 30, 2004, nearly three months later. Moreover, Trainor's filing of an EEOC charge on September 24, 2003 does not save her claim. *See Feng v. Sandrik*, 636 F. Supp. 77, 83 (N.D. Ill.1986) (holding that filing of EEOC charge does not toll EPA limitations period because EPA and Title VII provide independent forms of relief and plaintiff is not required to file an EEOC charge prior to filing a complaint in federal court or pursue Title VII and EPA relief concurrently).

Trainor argues that because she was terminated on July 11, 2003 and learned on that date that her severance was substantially less than that which she would have received under the CIC Severance Plan, her Title VII and EPA claims did not accrue until that date. To determine when a claim accrues, a court must "identify precisely the 'unlawful employment practice' of which [the plaintiff] complains." *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980). "[T]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Id.* at 258 (quotations omitted) (emphasis original).

With regard to Trainor's claims based on SBC's alleged discriminatory acts of declaring her ineligible for, and refusing to grandfather her into, the CIC Severance Plan,[5] such acts occurred prior to the expiration of CIC Severance Plan eligibility, or October 21, 2001. That Trainor did not feel the full effect of SBC's acts until she was terminated on July 11, 2003 does not effect the Court's analysis.

---

[5] SBC's conduct in this regard necessarily includes all decisions regarding implementation and enforcement of the CIC Severance Plan's cut-off date in relation to the delayed payroll conversion.

Further, Trainor has stated that her supervisor did not give her any indication that she could somehow still become eligible for the CIC Severance Plan. (Pl.'s Dep. at 200.)

Accordingly, her Title VII claims and EPA cause of action based on SBC's declaring her ineligible for and refusing to grandfather her into the CIC Severance Plan are time-barred. The Court therefore grants SBC's motion for summary judgment as to that portion of Count I as well as to Count II in its entirety.

Although Trainor argues in her brief that she also bases her Title VII and EPA claims on SBC's failure to increase the severance pay that she ultimately received as an accommodation for SBC's unreasonable delay in the payroll conversion, the record is devoid of any evidence that SBC's purported failure to increase her severance pay was a separate decision from its decision not to grandfather her into the CIC Severance Plan. Thus, this claim is also dismissed as untimely.[6]

However, Trainor also bases her Title VII cause of action on SBC's failure to offer her a lateral position of equal pay or a promotion instead of terminating her. (Second Am. Compl. ¶¶ 25-26.) These alleged unlawful employment practices occurred at the latest on July 11, 2003, the date of her termination. Because Trainor filed her EEOC Charge on September 24, 2003, these claims are not time-barred.

2. **Merits**

SBC argues that Trainor has failed to create a genuine issue as to a material fact regarding her race and sex discrimination claims based on its failure to transfer or promote her

---

[6]Even if the Court were to hold that these claims were timely filed, the Court would still grant SBC's summary judgment motion because Trainor has failed to point to a similarly situated male or non-African-American employee who was ineligible for the CIC Severance Plan or was not grandfathered into the Plan but ultimately received increased severance pay upon termination as an accommodation due to SBC's purported delay in the payroll conversion.

instead of terminating her employment. The burden is on the Title VII plaintiff to prove intentional discrimination by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Plaintiff may make out her discrimination claims through either the direct or indirect method. *Huff v. UARCO Inc.*, 122 F.3d 374, 380 (7th Cir. 1997).

Trainor has opted for the indirect method. (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 9.) Under the indirect, burden-shifting method, a plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of discrimination for failure to promote or transfer, plaintiff must establish that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she applied for and was rejected for the position sought; and (4) the position was granted to a person outside the protected class who is similarly or less qualified than she. *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005) (failure to promote); *Reese v. Gen. Elec. Co.*, No. 04 C 3637, 2005 WL 2035620, at *9 (N.D. Ill. Aug. 22, 2005) (failure to transfer).

Should plaintiff establish a *prima facie* case, the burden of production then shifts to defendant to show a legitimate, non-discriminatory reason for its actions. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). If defendant points to a legitimate, non-discriminatory reason, the burden then shifts back to plaintiff to show that defendant's stated reason is a pretext for discrimination. *Id.* However, at all times the ultimate burden of persuasion rests with the plaintiff. *Id.*

It is undisputed that Trainor is an African-American woman, and thus she has established the first element of the *prima facie* case for race and sex discrimination. In addition, SBC does not contend that Trainor was not qualified for the position she sought with the Treasury Department and thus waives any argument regarding the second factor of the *prima facie* case.

As for the third element of the *prima facie* case, it is undisputed that Trainor interviewed for a lateral position in the Treasury Department. (Def.'s LR 56.1(a)(3) ¶ 57.) It is also undisputed that Trainor voluntarily withdrew her application for that position because the position would eventually be phased out and, in her words, would be "transiting to San Antonio." (Pl.'s LR 56.1(b)(3)(A) ¶ 58.) Because Trainor withdrew her application, she cannot establish the third element of her *prima facie* case as to the Treasury Department position.

Nor can she establish the third element of her *prima facie* case regarding any other job. Apart from the Treasury Department position, Trainor did not apply for any other position. (Def.'s LR 56.1(a)(3) ¶ 59.) Trainor attempts to dispute that fact by stating why she did not apply. (Pl.'s LR 56.1(b)(3)(A) ¶ 59.)[7] However, that she had reasons for her inaction does not refute the fact that she did not apply for any other position.

Further, with regard to the fourth element, Trainor fares no better. She points to no other similarly situated person outside of the protected classes who applied for the Treasury Department position. With regard to either a transfer or promotion (the record is unclear) to another position which she believes was in the information technology group, she points to Bill Schaller, a Caucasian male, who, like Trainor, was a manager in the payroll office. (Pl.'s

---

[7]Local Rule 56.1(b)(3)(B), which governs statements of additional facts, requires the nonmovant to raise any additional facts that would require the denial of summary judgment and allows the movant to admit or deny those facts in accordance to the rule. Trainor's including a statement of additional facts in her response to the movant's statement of facts violates the local rule and robs SBC of the opportunity to admit or deny her statement of additional facts because Local Rule 56.1(a) does not permit the movant to reply to the nonmovant's responses and only allows the movant to respond to the nonmovant's statement of additional facts. Thus, the Court strikes the statement of additional facts in paragraph 59 of her LR 56.1(b)(3)(A) Statement.

LR56.1(b)(3)(A) ¶ 31.)[8] As stated above, however, Trainor did not apply for the position. Further, Trainor has failed to establish that Schaller was similarly or less qualified than she because she did not submit any statement of fact regarding (1) the qualifications that the position required or (2) a comparison of her and Schaller's qualifications.

In sum, Trainor has failed to create a genuine issue as to a material fact regarding the third and fourth elements of the *prima facie* case of race and sex discrimination. Because Trainor has failed to establish a *prima facie* case of race or sex discrimination, the Court need not reach the issue of pretext. See *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir. 1998); *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1142 (7th Cir. 1998); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178 (7th Cir. 1997); *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 444 (7th Cir. 1997); *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997). The Court thus grants SBC's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, this Court grants SBC's motion for summary judgment [43-1]. This case is hereby terminated.

**SO ORDERED**     ENTERED: 3/7/06

*[signature]*
**HON. RONALD A. GUZMAN**
**United States Judge**

---

[8]Trainor concedes that she does not know the details about the position in terms of title, responsibilities, or compensation. (Pl.'s Dep. at 193.) Although she believes that Schaller did not lose title or grade status, she admits that she does not "know the workings of his deal." (*Id.* at 194.)